**Petition of GOLD BOND STAMP COMPANY for an Order Modifying or Setting Aside Civil Investigative Demand No. 0016.**

No. 4–62 Civil 369.

United States District Court
D. Minnesota,
Fourth Division.

Aug. 9, 1963.

392

Matthew J. Levitt, John M. Palmer and Jerry F. Rotman, of Levitt & Palmer, Minneapolis, Minn. (John R. Heim, Minneapolis, Minn., of counsel), for petitioner.

Morton M. Maneker and Margaret H. Brass, Attys., Dept. of Justice, Washington, D. C., for United States.

NORDBYE, District Judge.

This cause came before the Court on a petition by the Gold Bond Stamp Company under Section 5(b) of the Antitrust Civil Process Act, 15 U.S.C.A. §§ 1311–1314, hereafter referred to as the Act, for an order modifying or setting aside a Civil Investigative Demand served upon it by the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice.

The petitioner contends that the demand should be modified or set aside upon the grounds that (1) it fails to define the "nature of the conduct" under investigation and the "provision of law applicable thereto" as required by Section 3(b) (1) of the Act; (2) it fails to request documents which are relevant to the subject matter of the investigation as required by Section 3(a) of the Act; and (3) it fails to describe the documents sought with sufficient certainty so as to allow them to be identified as required by Section 3(b) (2) of the Act. The petitioner further contends that because of these above-mentioned failures, this particular demand constitutes a fishing expedition or industry-wide survey, a result not intended by Congress, and

that it also is violative of the petitioner's constitutional right to be free from unlawful searches and seizures provided by the Fourth Amendment. In the alternative, the petitioner requests that the Court stay compliance with this demand until the Federal Trade Commission has completed its investigation of two of its leading competitors, Sperry and Hutchinson Company and Top Value Enterprises, Inc.

So far as this Court has been able to determine, this is the first time that any person has resorted to the procedure found in Section 5(b) of the Act in order to secure a determination of its rights and duties thereunder. Thus it may be helpful to examine briefly the purpose of the bill, its history, and its provisions in order to provide a framework in which to consider the petitioner's contentions.

Basically this Act provides a compulsory pre-complaint procedure through which the Antitrust Division can obtain documentary information upon which it can make a determination of whether or not a person has committed a civil violation of the antitrust laws. Prior to the enactment of this legislation, there were four methods which the Division could employ to obtain such information; first, by asking the person involved to furnish it voluntarily; second, by impaneling a grand jury and obtaining it under subpoena; third, by requesting it from the Federal Trade Commission; [1] and fourth, by commencing a civil suit with a skeleton complaint and then using the rules of discovery.

All of these methods were alleged to be unsatisfactory. The first method was unsatisfactory because the person from whom the information was sought could frustrate the investigation by refusing to cooperate. Case histories compiled by the Justice Department showed that this happened with some frequency.[2] The second method was unsatisfactory for several reasons, primarily, however, because it had been held in United States v. Procter & Gamble, 1958, 356 U.S. 677, 7 S.Ct. 983, 2 L.Ed.2d 1077, that it was an abuse of process to make use of the grand jury where there was no intention to bring a criminal action. The third method was unsatisfactory because it placed the investigation of the facts under the control of one group of men different from those who might eventually institute an action based upon them. Furthermore, it was unsatisfactory because it would take men whom the Federal Trade Commission needed and for whom appropriations had been made, away from the work of the Commission to do the work of the Justice Department. The fourth method was also unsatisfactory because it was felt that it was unfair to resort to such a practice without any certainty that sufficient evidence existed to warrant a civil suit.' Thus it seems reasonably clear that some other method not then available to the Justice Department had to be created.

The first impetus for such a method came from the Attorney General's National Committee to study the Antitrust Laws. In its report, the Committee recognized that the aforementioned methods of obtaining documentary information in order to determine whether or not a civil suit should be brought was inadequate and recommended that the Attorney General be allowed to serve Civil Investigative Demands.[3] The requirements of the Civil Investigative Demand as recommended by the Committee bears a striking resemblance to the requirements found in this Act now under construction. The President also recommended in his Economic Reports legislation similar to that found in the Act.[4] The Cabinet Committee on Small Business, in its first progress report issued on August 7, 1956, and in its second progress report issued on December 31, 1958, also recom-

---

1. See Federal Trade Commission Act, §§ 6, 9 (15 U.S.C.A. §§ 46, 49).

2. Hearing on S. 167 before a Subcommittee of the Senate Committee on the Judiciary, 87th Cong., 1st Sess., 55–66 (1961).

3. Atty. Gen. Nat'l Committee Antitrust Rep., 343–349 (1955).

4. Economic Reports of the President, 79 (Jan., 1956), 51 (Jan., 1957), 64 (Jan., 1958), 53 (Jan., 1959).

mended legislation empowering the Attorney General to obtain such information. Bills were presented to the 84th and 85th Congresses which looked to the carrying out of these recommendations.[5] In neither Congress were these bills acted upon. In the 86th Congress, Senator Estes Kefauver introduced S. 716, which provided the Attorney General with the authority to obtain documentary information for civil antitrust investigations by the use of the Civil Investigative Demands. This bill as amended was passed by the Senate, but never was acted upon by the House. In the 87th Congress, S. 167, which was identical with S. 716, was introduced. After numerous amendments, it was enacted on September 19, 1962.

The concept embodied in the Antitrust Civil Process Act is not particularly unique. At the time of its enactment, at least seventeen States allowed their Attorneys General somewhat similar visitorial powers in the antitrust enforcement area.[6] Furthermore, numerous federal officials also had visitorial powers of a like nature to aid them in the performance of their duties.[7]

Turning now to the Antitrust Civil Process Act itself, it authorizes the Attorney General or his Assistant in charge of the Antitrust Division to issue a Civil Investigative Demand whenever he has reason to believe that any person under investigation has in his possession any documents relevant to an antitrust investigation. The term "person" means any corporation, association, partnership, or other legal entity, not a natural person. The Civil Investigative Demand must be in writing and is required to state the nature of the conduct constitut-

ing the alleged violation and the provision of law applicable thereto. It also must define the documents sought with sufficient particularity so that they may be fairly identified and provide a reasonable time to allow the person on whom the demand is served to collect them for inspection. Furthermore, the demand also must identify the Custodian who will receive the antitrust documents secured by the demand. The Civil Investigative Demand cannot contain any requirement which would be considered unreasonable if contained in a grand jury subpoena duces tecum, nor can it require the production of documents which would be considered privileged if requested by a grand jury subpoena duces tecum. Service of the demand upon a person under investigation is provided for in the same manner as under the Federal Rules of Civil Procedure.

In order to insure that the documents received pursuant to such a demand are properly preserved and the rights of the person under investigation are protected, the Act requires the Assistant Attorney General in charge of the Antitrust Division to designate an Antitrust Documents Custodian who is charged with these responsibilities. The documents so obtained may be used by the United States in any court or grand jury proceeding involving antitrust violations. However, they may not be examined by anyone other than an employee of the Department of Justice or the person under investigation.

Upon the conclusion of any antitrust case or proceeding or after a reasonable time for analysis and inspection and failure to institute an antitrust case or proceeding, and upon written demand

---

5. H.R. 7309, 84th Cong., 1st Sess., and S. 2120, 85th Cong., 2d Sess.

6. These States were Arizona, Hawaii, Idaho, Kansas, Louisiana, Maine, Missouri, Montana, Nebraska, New York, North Carolina, Oklahoma, South Carolina, Texas, Utah, Washington and Wisconsin.

7. The Secretary of Agriculture has similar powers under 7 U.S.C.A. §§ 7a, 1373

and 1603; the Secretary of the Army under 33 U.S.C.A. § 506; the Secretary of Labor under 5 U.S.C.A. § 780; the Secretary of the Treasury under 31 U.S.C.A. § 548 and 26 U.S.C.A. § 7602; the Director, National Science Foundation, under 42 U.S.C.A. § 1872a, and the Administrator, Veterans Administration, under 38 U.S.C.A. § 3311.

upon the Attorney General or his Assistant in charge of the Antitrust Division, the documents produced, not including the copies made by the Antitrust Division, which have not passed into the hands of a court or grand jury, shall be returned by the Custodian to the person who has produced them pursuant to the demand.

Under the provisions of the Act, the sufficiency of such a demand may be tested by the person upon whom it is served in any district in which that person resides, is found, or transacts business. That person also may petition the Court in the district in which the Custodian has his office for an order requiring the performance of any duty required of him by the Act. The Attorney General also may file a petition in any district where the person under investigation resides, is found, or transacts business, for an order requiring compliance with a demand. Such orders are appealable and the disobedience of such an order is made punishable as contempt. Also any willful obstruction of the antitrust civil process done with "intent to avoid, evade, prevent, or obstruct compliance" with a demand is punishable by a fine of $5,000 or 5 years in jail or both.

■ With this framework in mind, the Court will consider first the petitioner's contention that the power granted to the Attorney General violates the search and seizure clause of the Fourth Amendment to the Constitution. In this regard, the petitioner relies primarily upon Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Silverthorne Lbr. Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696. However, these cases were considered by the Supreme Court in Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, in passing upon an administrative subpoena issued in investigating a violation of the Fair Labor Standards Act, and in United States v.

Morton Salt Company, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401, where the court considered the issuance of subpoenas by the Federal Trade Commission. In the Oklahoma Press Publishing Co. case, the court commented upon the general power of Congress over corporations engaged in interstate commerce, stating, 327 U.S. at p. 204, 66 S.Ct. at p. 503, 90 L.Ed. 614,

"* * * Historically private corporations have been subject to broad visitorial power, both in England and in this country. And it long has been established that Congress may exercise wide investigative power over them, analogous to the visitorial power of the incorporating state, when their activities take place within or affect interstate commerce."

As to the constitutionality of the Fair Labor Standards Act under the Fourth Amendment, the court held that in determining the reasonableness of the demand, the limitations placed on grand jury and civil discovery cases have to be considered, stating, 327 U.S. at p. 216, 66 S.Ct. at p. 509, 90 L.Ed. 614,

"The * * * investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's, or the court's in issuing other pretrial orders for the discovery of evidence, and is governed by the same limitations. These are that he [investigative official] shall not act arbitrarily or in excess of his statutory authority, but this does not mean that his inquiry must be 'limited * * *, by forecasts of the probable result of the investigation.' * * *."

And as to the requirement of reasonableness, the court stated, 327 U.S. at p. 209, 66 S.Ct. at p. 505, 90 L.Ed. 614, that it

"comes down to specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry. Necessarily, as has been said, this cannot be

reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry."

As to the hackneyed charge of "fishing expedition", the court stated in the Morton Salt Company case, 338 U.S. at p. 642, 70 S.Ct. at p. 363, 94 L.Ed. 401,

"We must not disguise the fact that sometimes, especially early in the history of the federal administrative tribunal, the courts were persuaded to engraft judicial limitations upon the administrative process. The courts could not go fishing, and so it followed neither could anyone else. Administrative investigations fell before the colorful and nostalgic slogan 'no fishing expeditions.' * * * More recent views have been more tolerant of it than those which underlay many older decisions."

And 338 U.S. at page 652, 70 S.Ct. at page 368, 94 L.Ed. 401,

"Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. * * * But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. 'The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.' Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614."

In upholding the sweeping investigative powers of the administrative bodies in these cases, the Supreme Court has set at rest many troublesome questions noted in the earlier cases. Undoubtedly the Civil Investigative Demand under the Act constitutes an innovation in the civil investigative powers of the Attorney General. The term "fishing trip", with reference to investigative process, has many connotations. It is a term which is loosely used by many persons. For that reason, in considering the statements of some Congressmen and others during the hearings on the bill to the effect that the Act does not encompass or recognize "fishing expeditions," one must conclude that their conclusions may not be entirely accurate. The Attorney General cannot assure anyone at this posture of the proceeding that there has been any violation of law on the part of the Gold Bond Stamp Company. To the extent that this investigation is being made in order to determine whether any antitrust law has been violated by the Gold Bond Stamp Company, this proceeding may be considered in one sense of the term a "fishing expedition." But the grand jury likewise when subpoenas are issued in connection with its investigations cannot with any assurance assume that any antitrust laws have been violated. Constantly the courts have been reminded of the "no fishing" signs which have confronted some governmental agencies in their attempts to enforce civil process, but here, by the clear intent of Congress, such signs as to a proceeding under the Antitrust Civil Process Act seem to have been virtually eliminated. If the proceeding is within the purview of authority vested in the Attorney General by Congress and if the nature of the inquiry under the antitrust laws, as required by the Act, is made known to the person investigated and the list of documents demanded is reasonably relevant to the investigation, the Court should recognize that this legislation comes within the broad powers of Congress. In any event, with the guideposts erected by the Supreme Court in the Oklahoma Press Publishing Co. and Morton Salt Company cases, it seems reasonably clear that the constitutional attack on these proceedings should not be sustained.

The most troublesome question arises with reference to the petitioner's contention that the demand fails to comply

with Section 3(b) (1) of the Act which provides that ---

"(b) Each such demand shall—

"(1) state the nature of the conduct constituting the alleged antitrust violation which is under investigation and the provision of law applicable thereto."

In compliance with that section, the demand served on the petitioner states as follows:

"This civil investigative demand is issued pursuant to the provisions of the Antitrust Civil Process Act, 76 Stat. 548–552, Title 15 United States Code Secs. 1311–1314, in the course of an inquiry for the purpose of ascertaining whether there is or has been a violation of the provisions of Title 15 United States Code Secs. 1, 2, 3, 13, 14 and 18 by conduct of the following nature: Restrictive practices and acquisitions involving the dispensing, supplying, sale or furnishing of trading stamps and the purchase and sale of goods and services in connection therewith."

■ It is quite evident that the short and somewhat terse statement as to the conduct of the company being investigated does not specify the particular offense or offenses under investigation. However, in considering the sufficiency of the designation of the conduct under investigation, one must remember that the purposes of the Act are twofold: (1) to enable the Attorney General to determine whether there has been a violation of the antitrust laws, and if so (2) to enable the Attorney General to allege properly the violations in a civil complaint. It is significant that the House Antitrust Committee in its report on this Act stated:

"In the absence of the authority provided for by this legislation, the Department of Justice may be placed in the position of filing a civil complaint without adequate prior information as to the nature of a suspected violation and without certainty that sufficient evidence would be available to justify bringing a civil case." (House Report No. 1386, 87th Cong., Second Sess., p. 4).

Necessarily, therefore, the nature of the conduct must be stated in general terms. To insist upon too much specificity with regard to the requirement of this section would defeat the purpose of the Act, and an overly strict interpretation of this section would only breed litigation and encourage everyone investigated to challege the sufficiency of the notice.

■ When Section 3(b) (1) was being drafted, the American Bar Association proposed an amendment which read:

"(b) Each such demand shall—

"(1) state the subject matter of the investigation, including the particular offense which the Attorney General or the Assistant Attorney General in charge of the Antitrust Division has reason to believe may have been committed, and the statute and section or sections thereof, alleged violations of which is under investigation." (Senate Hearing, pp. 103–4).

However, the requirement that the particular offense be specified in the demand which commenced the investigation was rejected by Congress, and the fact that Congress rejected this proposed amendment lends some support to the position of the Attorney General that the statement herein as to the nature of the investigation comes fairly within the contemplation of Congress. To one not acquainted with the nature of the trading stamp business, it may appear that the summarized statement as to the nature of the demand is too vague and too brief to be sufficiently informative of the scope and nature of the investigation. The test, however, must be whether the statement in the demand as to the nature of the conduct under investigation is sufficient to inform *adequately the person being investigated and sufficient to determine the relevancy of the documents demanded for inspection.*

It seems quite apparent that the petitioner understood the intent and scope of the demand served upon it because it interpreted this investigation by the Attorney General as one comparable to that which was being made by the Federal Trade Commission into the trading stamp industry and particularly the investigation by that agency at present with reference to the Sperry and Hutchinson Company (S & H) and Top Value Enterprises, Inc. (TV), two of the major trading stamp companies in the industry. In the petition before this Court, the petitioner pointed out that the Federal Trade Commission in its study of the stamp plan operations "would take action where necessary to prevent deception of customers, price discrimination, illegal exclusive dealing, boycott, conspiracy, or any other conduct in violation of the Federal Trade Commission or Clayton Acts." In addition, petitioner pointed out that in that the Attorney General has instituted a similar demand on one E. F. McDonald Stamp Company, a trading stamp company, and although that demand had been withdrawn, the investigation continues and the Department of Justice and the Federal Trade Commission therefore are conducting "simultaneous investigations relating to the same statutes and to the same industry activities," and therefore the Court should stay "further proceedings on this Civil Investigative Demand and any future Civil Investigative Demand which may be served on the petitioner in this matter, pending the outcome of the FTC's present investigation of S & H and TV and any other stamp company or companies and any proceedings resulting from said investigation."

■ The Court concludes, therefore, that the demand served upon this petitioner justifies a liberal interpretation in view of the circumstances, and that therefore it fairly complies with the requirements of Section 3(b) (1) of the Act.

■ As indicated above, petitioner in one of its demands herein seeks an order from this Court staying these proceedings for the reason that the Department of Justice has had no previous experience as to the manner in which the trading stamp industry operates, and that therefore this proceeding should be stayed until the Federal Trade Commission has completed its investigation of two of the leading trading stamp companies in the industry. But there is an absence of any showing of unusual circumstances similar to those which concerned the court in Landis v. North American Co., 1936, 299 U.S. 248, 249, 57 S.Ct. 163, 81 L.Ed. 153. In that case, the Government moved to stay certain actions which sought to enjoin the enforcement of the Public Utility Holding Company Act of 1935. The Act was attacked as being unconstitutional and injunctive orders preventing its enforcement were requested in some 47 cases brought in 13 districts. In view of the one test case which would determine the question raised, a stay of the others pending its determination was recognized as appropriate with certain restrictions and limitations. The alleged similarity of the methods of doing business by the major trading stamp companies, including S & H, TV and Gold Bond, will not justify the stay of these proceedings instituted by the Attorney General. The Federal Trade Commission is not investigating the Gold Bond Stamp Company. There is no present danger of any overlapping in the investigations by these two agencies of the Government. Cumulative remedies afforded governmental agencies to ferret out activities allegedly detrimental to competition are fully consistent with the constitutional powers granted to such agencies. In Federal Trade Commission v. Cement Institute, 1948, 333 U.S. 683, appearing at p. 694, 68 S.Ct. 793, at p. 800, 92 L.Ed. 1010, the Supreme Court made this evident in the statement,

"We find nothing to justify a holding that the filing of a Sherman Act suit by the Attorney General requires the termination of these Federal Trade Commission proceedings. In the first place, although all conduct violative of the Sherman Act may likewise come within the un-

fair trade practice prohibitions of the Trade Commission Act, the converse is not necessarily true. It has long been recognized that there are many unfair methods of competition that do not assume the proportions of Sherman Act violations. Federal Trade Comm'n v. R. F. Keppel & Bro., 291 U.S. 304, [54 S.Ct. 423, 78 L.Ed. 814]; Federal Trade Comm'n v. Gratz, 253 U.S. 421, 427, 40 S.Ct. 572, 64 L.Ed. 993. Hence a conclusion that respondents' conduct constituted an unfair method of competition does not necessarily mean that their same activities would also be found to violate § 1 of the Sherman Act. In the second place, the fact that the same conduct may constitute a violation of both acts in nowise requires us to dismiss this Commission proceeding. Just as the Sherman Act itself permits the Attorney General to bring simultaneous civil and criminal suits against a defendant based on the same misconduct, so the Sherman Act and the Trade Commission Act provide the Government with cumulative remedies against activity detrimental to competition. Both the legislative history of the Trade Commission Act and its specific language indicate a congressional purpose, not to confine each of these proceedings within narrow, mutually exclusive limits, but rather to permit the simultaneous use of both types of proceedings. Marquette's objections to the Commission's jurisdiction are overruled."

■ The documents listed in the schedule to be made available to the Custodian are numerous, but they comply with Sections 3(a) and 3(b) (2) of the Act. They do not "(1) contain any requirement which would be held to be unreasonable if contained in a subpoena duces tecum issued by a court of the United States in aid of a grand jury investigation of such alleged antitrust violation; or (2) require the production of any documentary evidence which would be privileged from disclosure if demanded by a subpoena duces tecum issued by a court of the United States in aid of a grand jury investigation of such alleged antitrust violation." Section 3(c) (1) (2), Antitrust Civil Process Act. Moreover, the petitioner is not required to compile any evidentiary matter or to make any computations or summaries from its books and records unless the company in certain instances desires to do so. The position of the Government that the demand seeks documents which will enable it to determine whether Gold Bond has made acquisitions of competitors, customers or suppliers, or whether it has established intercorporate relationships with them which may be illegal, and whether it is engaged in restricted practices, including exclusive dealing, resale price maintenance, restrictions on alienation, price discrimination, and tie-ins which may violate antitrust laws is reasonably sustained. And petitioner's contention that the investigative tool which is placed in the hands of the Department of Justice by this Act with its sweeping power is being utilized to harass and unnecessarily burden it in demanding the documents listed in the demand is not sustained by this showing. In fact, the burden which is imposed upon petitioner is substantially the same as that which would inure to a litigant against whom the Government has commenced an action under one of the sections of the antitrust laws, and discovery proceedings under the Federal Rules of Civil Procedure were utilized.

Petitioner contends that some of the documents to be produced are privileged and would violate the attorney and client relationship. However, any listed document which petitioner believes to be privileged may be submitted to the Court in camera and a ruling will be made thereon.

It follows from the foregoing that the petitioner's motion to set aside or stay the demand instituted by the Attorney General under the Antitrust Civil Process Act will be denied. It is so ordered. An exception is allowed.