The **ATTORNEY GENERAL OF TEXAS**, Appellant,

v.

**ALLSTATE INSURANCE COMPANY**, Appellee.

No. 05–84–00957–CV.

Court of Appeals of Texas, at Dallas.

Feb. 27, 1985.

Rehearing Denied April 8, 1985.

Jim Mattox, Atty. Gen. of Texas, David Richards, Executive Asst., Atty. General's Office, Paul D. Rich, Chief Antitrust Div., Atty. General's Office, Marianne Woodard, Christine Beck, Asst. Attys. Gen., Austin, Tex., for appellant.

E. Thomas Bishop, P. Michael Jung, Mark Donheiser, of Strasburger & Price, Dallas, Tex., for appellee.

Before AKIN, DEVANY and McCLUNG, JJ.

AKIN, Justice.

The Attorney General of Texas appeals from an order setting aside a civil investigative demand ("the C.I.D.") served by the Attorney General on Allstate Insurance Company ("Allstate"). The C.I.D. was issued by the Attorney General pursuant to TEX.BUS. & COM.CODE ANN. §§ 15.01–15.26 (Vernon Supp.1985), the Texas Free Enterprise and Antitrust Act of 1983 ("the Act"). Pursuant to section 15.10(f) of the Act, Allstate petitioned the district court to have the C.I.D. set aside or modified. The district court rendered an order setting aside the C.I.D. in its entirety, from which the Attorney General appeals.

On appeal, the Attorney General contends that the district court erred in setting aside the C.I.D. because: (1) Allstate's status as an insurance company does not exempt it from the Attorney General's investigative authority under the Act; (2) the description in the C.I.D. of the nature of the activities that are the subject of the Attorney General's investigation complies with the Act's requirements; and (3) the information sought by the C.I.D. is discoverable as required by the Act. We agree with the Attorney General's first and second contentions. Consequently, we hold that Allstate is not exempt from the Attorney General's investigative authority under the Act. Further, we hold that the C.I.D.'s description of the nature of the activities that are the subject of the investigation complies with the requirements of the Act. However, we cannot determine whether the information sought is discoverable. Such a determination should be made, in the first instance, by the district court. Accordingly, we reverse the district court's order setting aside the C.I.D. and remand the cause for further proceedings consistent with this opinion.

The Attorney General first contends that Allstate's status as an insurance company does not exempt it from the Attorney General's investigative authority under the Act. In this respect, Allstate first argues that the legislature has expressly delegated to the State Board of Insurance the *exclusive* authority to regulate all activities affecting the business of insurance.[1] We do not agree with Allstate's argument. TEX. INS.CODE ANN. art. 21.21 (Vernon 1981), which concerns regulation by the State Board of Insurance of trade practices in the business of insurance, supports our position. Section 8 of article 21.21 provides:

> No order of the Board under this Act or order of a court to enforce the same shall in any way relieve or absolve any person affected by such order from any liability *under any other laws of this state.* (Emphasis added).

This provision indicates that the legislature did not intend for the State Board of Insurance to have exclusive regulatory authority in this area. *See Dodd v. Commercial Union Insurance Co.,* 373 Mass. 72, 365 N.E.2d 802 (1977) (court, construing provision in Massachusetts insurance law virtually identical to article 21.21, section 8, held that such provision "clearly contemplates concurrent application" of a more general statute concerning unfair and deceptive trade practices).

Moreover, the language of the Act leads us to conclude that Allstate is not exempt from the Attorney General's investigative authority thereunder. Section 15.-02(a) provides:

> (a) *The provisions of this Act are cumulative of each other and of any other provision of law of this state in effect relating to the same subject.* Among other things, the provisions of this Act preserve the constitutional and common law authority of the attorney general to bring actions under state and federal law. (Emphasis added).

Additionally, we note that section 15.03(2) expressly provides that, as used in the Act, the term "goods" includes insurance. The purpose of the Act, as set forth in section 15.04, "is to maintain and promote economic competition in trade and commerce" in Texas; the terms "trade" and "commerce" are defined in section 15.03(5) as, *inter alia,* "the sale, purchase, lease, exchange, or distribution of any *goods* or services." (Emphasis added). Further, we observe that among the anti-competitive practices prohibited by section 15.05 of the Act are the following:

> (a) Every contract, combination, or conspiracy in restraint of *trade or commerce* is unlawful.
>
> (b) It is unlawful for any person to monopolize, attempt to monopolize, or conspire to monopolize any part of *trade or commerce.*
>
> (c) It is unlawful for any person to sell, lease, or contract for the sale or lease of any *goods,* whether patented or unpatented, for use, consumption, or resale or to fix a price for such use, consumption, or resale or to discount from or rebate upon such price, on the condition, agreement, or understanding that the purchaser or lessee shall not use or deal in the *goods* of a competitor or competitors of the seller or lessor, where the effect of the condition, agreement, or understanding may be to lessen competition substantially in any line of *trade or commerce.* (Emphasis added).

These provisions clearly establish that the Attorney General has the authority under the Act to investigate possible anticompetitive practices within, or connected with, the insurance industry.

Allstate also argues that it is exempt from the Attorney General's investigative authority because it falls within the "business of insurance" exemption from federal antitrust law which is incorporated in the Act. Section 15.05(g) provides that "[n]othing in this section shall be construed

---

**1.** For the purposes of addressing Allstate's argument, we assume, without deciding, that the activities about which the C.I.D. inquires are within the definition of "business of insurance." *See* footnote 2 of this opinion.

to prohibit activities that are exempt from the operation of the Federal antitrust laws...." The federal "business of insurance" exemption is contained within the McCarran-Ferguson Act, 15 U.S.C.A. §§ 1011–1015 (West 1976). Section 1012(b) provides:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided*, that after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law. (Emphasis in original).

Section 1013(b) provides that "[n]othing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to *boycott*, coerce, or intimidate, or any act of *boycott*, coercion, or intimidation." (Emphasis added). Thus, there are three requirements that must be met in order for the federal "business of insurance" exemption to be applicable: (1) the activity at issue must be part of the "business of insurance"; (2) the activity must be regulated by the state; and (3) the activity must not be a boycott. We need address only the third requirement.[2] The C.I.D. states that it was issued because the Attorney General "is investigating the possibility of a group boycott" of certain providers of health care services to Texas workers' compensation claimants. Such alleged activity is clearly encompassed within the broad definition of "boycott" as that term

is used in section 1013(b) of the McCarran-Ferguson Act. *See St. Paul Fire & Marine Insurance Co. v. Barry*, 438 U.S. 531, 541–550, 98 S.Ct. 2923, 57 L.Ed. 932 (1978). We conclude, therefore, that the activities about which the C.I.D. inquiries are not within the scope of the federal "business of insurance" exemption. Consequently, we hold that Allstate is not exempt from the Attorney General's investigative authority under the Act.

■ Next, the Attorney General contends that the description in the C.I.D. of the nature of the activities that are the subject of the Attorney General's investigation complies with the Act's requirements. Section 15.10(c)(1) of the Act provides:

*Each demand shall describe the nature of the activities that are the subject of the investigation and shall set forth each statute and section of that statute that may have been or may be violated as a result of such activities.* Each demand shall advise the person upon whom the demand is to be served that the person has the right to object to the demand as provided for in this section. (Emphasis added).

Allstate does not dispute that the C.I.D. sets forth the statute and section thereof that may have been violated. The issue before us, then, is whether the C.I.D. adequately "describe[s] the nature of the activities that are the subject of the investigation." The description in the C.I.D. states that the Attorney General "is investigating the possibility of a group boycott of certain providers of health care services to workers' compensation claimants in the State of Texas."

Section 15.04 of the Act directs us to construe the Act's provisions "in harmony with federal judicial interpretations of comparable federal antitrust statutes." Sec-

---

**2.** We note that the Supreme Court has identified three criteria relevant in determining whether a particular practice is part of the "business of insurance": (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between insurer and insured; and (3) whether the practice is

limited to entities within the insurance industry. *Union Labor Life Insurance Co. v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). Although we need not reach the issue in our disposition of the instant case, it is our view that a boycott of providers of health care services is unlikely to be part of the "business of insurance."

tion 15.10 of the Act, concerning civil investigative demands, is very similar to the federal Antitrust Civil Process Act ("the A.C.P.A."), 15 U.S.C.A. §§ 1311–1314 (West 1982). Consequently, we must construe section 15.10 in harmony with federal judicial interpretations of the A.C.P.A.

A leading case interpreting the A.C.P.A. is *Petition of Gold Bond Stamp Co.*, 221 F.Supp. 391 (D.Minn.1963), *aff'd per curiam*, 325 F.2d 1018 (8th Cir.1964). There that court stated that the purposes of the A.C.P.A. were two-fold: (1) to enable the Attorney General to determine whether there has been a violation of the antitrust laws, and if so (2) to enable the Attorney General to properly allege the violations in a civil complaint. *Gold Bond*, 221 F.Supp. at 397.

*Gold Bond* held that the test of the adequacy of a civil investigative demand's description of the nature of the activities which are the subject of the investigation

> must be whether the statement in the demand as to the nature of the conduct under investigation is sufficient to inform *adequately the person being investigated and sufficient to determine the relevancy of the documents demanded for inspection.* (Emphasis in original).

*Gold Bond*, 221 F.Supp. at 397. We conclude that the description at issue in the present case adequately informs Allstate of the intent and scope of the demand served upon it. *See Gold Bond*, 221 F.Supp. at 398. It is clear that the Attorney General is investigating the possibility of a group boycott of entities that provide health care services to workers' compensation claimants in Texas. This description is sufficient to allow Allstate to determine, in light of the fact that Allstate is an active workers' compensation insurer in Texas, the relevancy of the documents demanded for inspection. Accordingly, we hold that the description in the C.I.D. of the nature of the activities that are the subject of the

Attorney General's investigation complies with the requirements of the Act.

■ Finally, the Attorney General contends that the information sought by the C.I.D. is discoverable, as required by section 15.10(d)(1) of the Act.[3] Allstate, of course, asserts that the information is not discoverable. We decline to determine whether the information sought is discoverable because such a determination should first be made by the trial court. Indeed, we are unable to pass on this question because the information claimed to be privileged was neither before the trial judge nor is before us. In this respect, we note that any requested document which Allstate believes to be privileged may be submitted to the district court *in camera* for a ruling to be made thereon. *Finnell v. United States Department of Justice*, 535 F.Supp. 410, 412 (D.Kan.1982); *Gold Bond*, 221 F.Supp. at 399.

We reverse the order of the district court setting aside the C.I.D. and remand the cause to the district court for further proceedings not inconsistent with this opinion.

---

**3.** Section 15.10(d)(1) provides: "A demand may require the production of documentary material, the submission of answers to written interrogatories, or the giving of oral testimony only if the material or information sought would be discoverable under the Texas Rules of Civil Procedure or other state law relating to discovery."