STATE of Florida, ex rel. Robert A. BUTTERWORTH, Plaintiff,

v.

LIQUID AIR CORPORATION, Liquid Carbonic Industries Corporation, and the BOC Group, Inc., Defendants.

No. 92–348–CIV–ORL–19.

United States District Court, M.D. Florida, Orlando Division.

Nov. 20, 1992.

Jerome W. Hoffman, Scott Edward Clodfelter, Lizabeth Ann Leeds, Atty. General's Office, Dept. of Legal Affairs, Antitrust Section, Tallahassee, FL, for State of Florida, ex rel. Robert A. Butterworth.

James Robert Lussier, David Leonard Evans, Mateer, Harbert & Bates, P.A., Rafael Eduardo Martinez, Thomas Earle Dukes, III, Sanders, McEwan, Mims & Martinez, P.A., Orlando, FL, Patrick J. Heneghan, William G. Schopf, Jr., Arthur J. Howe, Schopf & Weiss, Chicago, IL, Timothy Desmond Kelly, Wendy A. Snyder, Kelly & Berens, Minneapolis, MN, for Liquid Air Corp.

Michael Sennett, Michael A. Forti, Michael J. Abernathy, Bell, Boyd & Lloyd, Chicago, IL, Christopher K. Kay, Foley & Lardner, Orlando, FL, Edward W. Mullinix, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Liquid Carbonic Industries Corp.

John E. Burke, Burke, Bosselman & Weaver, Chicago, IL, Rafael Eduardo Martinez, Thomas Earle Dukes, III, Sanders, McEwan, Mims & Martinez, P.A., Orlando, FL, Claudia J. Lovelette, Nicholas J. Bua, Burke, Bosselman and Weaver, Chicago, IL, for BOC Group, Inc.

## ORDER

FAWSETT, District Judge.

This case comes before the Court on the Objections of Defendant the BOC Group, Inc., to the Magistrate's Order Dated August 24, 1992 (Doc. No. 49, filed September 2, 1992) and Memorandum of the Defendant the BOC Group, Inc. in Support of Objections to the Magistrate's August 24, 1992 Order (Doc. No. 50, filed September 2, 1992). This issue was originally presented to Magistrate Dietrich on the Motion of Defendant the BOC Group, Inc. to Compel and Certificate of Counsel Pursuant to Local Rule 3.04 (Doc. No. 40, filed July 28, 1992); Memorandum in Support of Motion to Compel of Defendant the BOC Group, Inc. (Doc. No. 41, filed July 28, 1992); and Plaintiff, State of Florida's Memorandum in Opposition to Defendants the BOC Group, Inc.'s Motion to Compel (Doc. No. 43, filed August 13, 1992). Magistrate Dietrich's Order of August 24, 1992, denied Defendant's Motion to Compel (Doc. No. 47).

At issue here is whether the State of Florida may invoke the work-product privilege to protect four statements it gathered through Civil Investigative Demands made after the State decided to initiate litigation in this case. The Defendants argue that the Civil Investigative Demand ("CID") provided for by Florida Statue § 542.28 is not a vehicle for conducting *ex parte* discovery in preparation for an anticipated lawsuit, and therefore, the State should not be allowed to shield this

information from discovery. In response, the State of Florida asserts that the traditional work-product doctrine developed by *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) protects the CID testimony from discovery because the CID statements were taken in anticipation of litigation.

The propriety of using CIDs for the purpose of civil litigation was first considered in *In re Petition of Ezell*, 446 So.2d 253 (Fla. 5th DCA 1984). There, the issue was whether by authorizing CIDs the statute unconstitutionally infringed on the exclusive rule-making powers of the Florida Supreme Court. The court held that CIDs were constitutional to the extent that they were investigatory tools and did not "regulate the practice and procedure in the courts." *Id.* at 255. The *Ezell* holding noted that under Florida Statute § 542.28(1), CIDs may only be issued prior to the institution of a civil or criminal proceeding. The court went on to state:

> [t]he C.I.D. may not be utilized in lieu of discovery authorized by the rules of procedure once the litigation phase is commenced nor is its purpose the perpetuation of testimony for a court action.

*Id.* at 256.

There are two federal district court decisions from the Northern District of Florida with facts similar to the instant case that address directly the extent to which the State may invoke the work-product privilege to shield information gathered through CIDs. In the first case, *State of Florida v. Industrial Chemicals, Inc.*, 145 F.R.D. 585 (N.D.Fla. 1991) (Judge Vinson) (hereinafter *"Industrial Chemicals"*), the court compelled production of eleven CID depositions over the State's work-product objections. The court· stated that:

> [g]iven the circumstances under which the State collects CID materials, applying the work product privilege to them would not "protect the mental processes" of the State attorneys. Rather, as the State has shown in this very case, it would provide a means by which it could circumvent fair discovery under the Federal Rules of Civil Procedure. By combining Section 542.28 with Rule 26(b)(3), the State seems to believe

that it can conduct a broad-based, one-sided discovery, and then, after it has completely prepared for trial, hide the results from the defendant. This goes well beyond the protection of "mental processes" envisioned by *Hickman*, and Rule 26(b)(3).

*Id.* at 587–88. Judge Vinson's reasoning identifies the potential for manipulation that § 542.28 presents. If the State is able to use the sword of its CID investigative powers after making the decision to litigate, it cannot also use the shield of the work-product privilege to insulate itself from discovery under the Federal Rules of Civil Procedure.

This reasoning was seconded by the court in *In re Infant Formula*, MDL–878 (N.D.Fla. March 2, 1992) (Judge Paul). The court noted that:

> The Attorney General need only document the fact that a decision to file a complaint has been made. From this time until the time at which the complaint is actually filed, the Attorney General could engage in "discovery" with CIDs, while the defendant could not do the same. Moreover, when the complaint was filed and discovery made available to defendant(s), the CID material would be undiscoverable work product. The Attorney General would enjoy a headstart in the litigation, and the defendant would be prevented from being brought up to speed.

*Id.* at 6. After expressing these misgivings about applying the work-product privilege to CIDs, Judge Paul went on to state, "This court is legally powerless to prevent such an outcome." *Id.*

Judge Paul explains why he feels forced to reach this decision by criticizing Judge Vinson's conclusion in *Industrial Chemicals* that the State is obligated to discontinue the use of CIDs once the *decision* is made to institute a civil or criminal action. Judge Paul feels that this conclusion is contrary to *Ezell* and the language of the statute itself because the statute specifically provides that the Attorney General may issue a CID prior to the *institution* of a civil or criminal proceeding. Without explanation, however, Judge Paul further reasoned that because, in his view, the state had the power to issue CIDs up to

the point litigation commenced, the CIDs were entitled to work-product protection.

This last conclusion does not follow from *Ezell.* The issue in *Ezell* was not the applicability of the work-product doctrine to CIDs but the overall constitutionality of CIDs. The court specifically held that so long as CIDs are used as investigatory tools, they do not infringe on the Florida Supreme Court's exclusive powers to regulate the practice and procedure of the courts. To the extent CIDs are used as litigation tools, they overstep the bounds of constitutionality set out by the Florida courts. The Florida Legislature may provide the Attorney General with investigative tools, but, under *Ezell*'s interpretation of Article V, § 2(a) of the Florida Constitution, it may not dictate the discovery rules applicable in Florida courts. *Ezell* at 255.

By continuing to use the CIDs after making the decision to litigate, and then asking for work-product protection, the State crosses over the boundary of investigation and into the realm of litigation. The State admits as much by seeking to invoke to privilege in the first place because work-product protection is not available for investigative materials unless the principal purpose for conducting the investigation is anticipated litigation. *See Binks Manufacturing Co. v. National Presto Industries, Inc.,* 709 F.2d 1109, 1119 (7th Cir.1983).[1]

Moreover, the twin policy rationales behind the work-product doctrine do not suggest its application in this case. This is not a case where an attorney's mental impressions are at risk of being exposed. Nor is this a case where a party will be deterred from pursuing an investigation because another may reap the benefits of his or her hard work. There is no reason to believe that because the information it gathers may be discoverable in a subsequent civil lawsuit the State will be deterred from investigating potential antitrust violations.

Finally, this Court wishes to emphasize that with today's overcrowded docket there is no place left for the "sporting element" of discovery. Complex antitrust cases such as this require the parties to overcome the traditional cat-and-mouse mentality and provide each other on a timely basis with whatever information is relevant to a full and fair adjudication of the issues on the merits.

Accordingly, the Magistrate's Order of August 24, 1992 (Doc. No. 47) is VACATED. Plaintiff, State of Florida, is ORDERED to respond to Defendant BOC's document request number 7 and document request number 8.

DONE and ORDERED.

---

1. In the only reported state court decision concerning the application of the work-product privilege to CIDs, the Texas Supreme Court stated, "[t]he trial court properly determined that 'depositions, statements or interrogatory responses obtained' from third parties pursuant to the State's CID powers were not protected by the work product doctrine." *Texas v. Lowry,* 802 S.W.2d 669, 673 n. 6 (Tex.1991).