Petition for Writ of Mandamus Denied, and Majority and Concurring
Opinions filed October 9, 2008








 

Petition
for Writ of Mandamus Denied, and Majority and Concurring Opinions filed October
9, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00204 -CV

____________

 

IN RE MEMORIAL HERMANN HEALTHCARE SYSTEM

and MEMORIAL HERMANN HOSPITAL SYSTEM, Relators

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

M A J O R
I T Y   O P I N I O N








Relators
Memorial Hermann Healthcare System and Memorial Hermann Hospital System
(collectively, AMemorial Hermann@) received a civil investigative
demand (ACID@) from the Texas attorney general
following the demise of a rival hospital that was owned and operated by real
party in interest Stealth, L.P.  Suing Memorial Hermann under the Texas
antitrust statute, Stealth has requested that Memorial Hermann produce copies
of all materials previously disclosed to the attorney general in response to
the CID.  Memorial Hermann contends that those materials are privileged from
discovery in private antitrust litigation and that Stealth=s requests were overly broad. 
Because the respondent[1] ordered
production, Memorial Hermann asks that we issue a writ of mandamus to vacate
the trial court=s discovery order.  We hold that any privilege created by
section 15.10(i) of the Texas Free Enterprise and Antitrust Act does not extend
to CID materials held by the defendant in private antitrust litigation.  We
further hold that the requests are not facially overbroad.  Therefore, we deny
the petition for writ of mandamus.

BACKGROUND

Memorial
Hermann is a non-profit corporation that owns and operates a chain of hospitals
in and around the Houston area.  In 2006, Memorial Hermann was sued by Stealth,
L.P., for alleged antitrust violations under the Texas Free Enterprise and
Antitrust Act (the AAct@).  Stealth had been formed in 2002 by a collection of
physicians who sought to open and operate a for-profit hospital near one of
Memorial Hermann=s facilities.  Stealth opened Town & Country Hospital in
November 2005, but the hospital floundered immediately and was closed only a
few months later.  In the underlying antitrust suit, Stealth has blamed
Memorial Hermann for the failure of Town & Country Hospital.  Specifically,
Stealth has accused Memorial Hermann of violating the Act by arranging a Ahorizontal boycott@ that precluded health insurance
companies from contracting with the fledgling hospital.  








The Act,
which provides for public and private lawsuits[2]
for alleged antitrust action, also empowers the Texas attorney general to
investigate possible antitrust violations through the issuance of a CID.  See
Tex. Bus. & Comm. Code Ann. ' 15.10(b) (Vernon 2002).  After Stealth
filed suit, the attorney general opened an antitrust investigation and issued a
CID to Memorial Hermann.  Memorial Hermann produced roughly 87,000 pages of
responsive documents to the attorney general.

In its
private action, Stealth propounded requests for production to Memorial Hermann,
seeking copies of the CID documents that Memorial Hermann had disclosed to the
attorney general.  Memorial Hermann produced 54,000 pages of CID materials to
Stealth but resisted further production under the claim that the remaining
33,000 pages are privileged from disclosure under section 15.10(i) of the Act. 
Memorial Hermann also objected that Stealth=s requests were overly broad, but it
produced no evidence in support of its objection.  The trial court ordered
Memorial Hermann to fully respond to the requests for production.  This
mandamus action followed.

Memorial
Hermann advances two arguments in this proceeding.  First, it contends that the
Act contains a Ablanket privilege@ under which a defendant may decline
to turn over CID materials unless its opponent can demonstrate Agood cause@ for such production.  Second,
Memorial Hermann argues that the trial court abused its discretion in
overruling its objection that the requests were overly broad.

                                                       STANDARD
OF REVIEW

To
obtain mandamus relief, relators must demonstrate that the trial court clearly
abused its discretion and that they have no adequate remedy by appeal.  In
re Sw. Bell Tel. Co., 226 S.W.3d 400, 403 (Tex. 2007) (orig. proceeding). 
A trial court abuses its discretion if it reaches a decision that is arbitrary,
unreasonable, or without basis or reference to guiding principles of law.  Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding); Johnson
v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig.
proceeding).  A trial court has no discretion in determining what the law is or
in applying the law to the facts; therefore, a clear failure by the trial court
to analyze or apply the law correctly constitutes an abuse of discretion.  Walker,
827 S.W.2d at 840.








A party
has no adequate remedy by appeal where a trial court erroneously orders the
disclosure of privileged information.  In re Perry, 60 S.W.3d 857, 862
(Tex. 2001) (orig. proceeding).  Likewise, there may be no adequate remedy by
appeal from a trial court=s order compelling production in response to an overly-broad
discovery request.  In re CSX Corp., 124 S.W.3d 149, 153 (Tex. 2003)
(orig. proceeding).  

                                          APPLICABILITY
OF CID PRIVILEGE

The
statute in question provides as follows:

Except as provided
in this section or ordered by a court for good cause shown, no documentary
material, answers to interrogatories, or transcripts of oral testimony, or
copies or contents thereof, shall be available for examination or used by any
person without the consent of the person who produced the material, answers, or
testimony and, in the case of any product of discovery, of the person from whom
the discovery was obtained.

Tex. Bus. & Comm.
Code Ann. ' 15.10(i)(1).  Memorial Hermann asks that we interpret this section as
privileging all CID materials, no matter who possesses them.  In contrast,
Stealth contends that this section creates a privilege that inures to the
benefit of the attorney general only and may not be claimed by the person who
produced CID materials to the attorney general.

A.        Plain Statutory Language








In
interpreting this statute, we begin with the plain meaning, which we derive
from the entire act and not from isolated portions.  See Mid-Century Ins.
Co. of Tex. v. Ademaj, 243 S.W.3d 618, 621 (Tex. 2007).  We read the
statute as a whole, interpreting it to give effect to every part.  See id.;
City of Houston v. Fletcher, 63 S.W.3d 920, 922 (Tex. App.CHouston [14th Dist.] 2002, no pet.). 
Accordingly, we consider the role of this statute in the broader statutory
scheme.  See 20801, Inc. v. Parker, 249 S.W.3d 392, 396 (Tex. 2008). 
Because words in a vacuum mean nothing, we must read section (i)(1) in the
context of the remainder of the statute.  See Bridgestone/Firestone, Inc. v.
Glyn-Jones, 878 S.W.2d 132, 133 (Tex. 1994); Tex. Dep=t of Mental Health & Mental
Retardation, 58
S.W.3d 278, 282 (Tex. App.CFort Worth 2001, pet. dism=d by agr.).

Section
15.10 governs the attorney general=s use of a CID to probe possible
antitrust violations.  See generally Tex. Bus. & Comm. Code Ann. ' 15.10(b).  Read as a whole, section
15.10(i) contemplates the manner in which the attorney general, as opposed to a
private litigant, may use and disclose CID materials:

$          AThe attorney general may make available for inspection or prepare copies of [CID materials]
... in the course of any investigation or a judicial proceeding in which the
state is a party.@  Id. '
15.10(i)(2) (emphasis added).

$          AThe attorney general may make available for inspection or prepare copies of [CID materials]
... for official use by any officer of the State of Texas or of the United
States charged with the enforcement of the laws of the State of Texas or the
United States[.]@ Id. '
15.10(i)(3) (emphasis added).

$          AUpon request, the attorney general shall make
available [CID materials] for inspection by the person who produced such
material or information[.]@ Id. ' 15.10(i)(4) (emphasis added).

$          A[T]he attorney general shall notify the
person who produced the material of the attorney general=s intent to make such disclosure.@  Id. ' 15.10(i)(5)
(emphasis added).

$          AUpon written request, the attorney general
shall return documentary material produced under this section in connection
with an antitrust investigation to the person who produced it[.]@  Id. '
15.10(i)(6) (emphasis added).

Read in context, section
(i)(1) precludes the attorney generalCbut nobody elseCfrom disclosing CID materials unless
either (1) the producing person consents, or (2) the person seeking to examine
the materials obtains a court order permitting access.  See id. ' 15.10(i)(1).  Section 15.10 does not
discuss or reference private antitrust lawsuits but, rather, concerns the
attorney general=s use of a CID prior to the institution of a public antitrust
suit.  See, e.g., id. ' 15.10(b).  Therefore, the plain statutory language does not
confer a privilege upon the producing person (here, Memorial Hermann) in a
subsequent lawsuit.








B.        Legislative Purpose

Because
section 15.10(i) is clear and unambiguous, we need not resort to rules of
construction.  In re Canales, 52 S.W.3d 698, 702 (Tex. 2001) (orig.
proceeding).  We may still consider, among other things, the statute=s objectives and the consequences of
a particular construction.  Id.  We conclude that Memorial Hermann=s suggested interpretation would not
further the legislative objectives of section 15.10.

We need
look no further than the statute itself to ascertain its statutory objectives: AThe purpose of this Act is to
maintain and promote economic competition in trade and commerce occurring
wholly or partly within the State of Texas and to provide the benefits of that
competition to consumers in the state.@  Tex. Bus. & Comm. Code Ann. ' 15.04 (Vernon 2002).  Consistent
with this purpose, the Act empowers the attorney general to prosecute a public
lawsuit against persons who are thought to have violated certain of the Act=s provisions.  See id. ' 15.20(a).  The Act also creates a
private cause of action in favor of any person whose business or property was
injured because of an antitrust violation.  See id. ' 15.21(a)(1).

The Act
specifically includes several express procedural safeguards for CID
recipients.  For example, production is limited to those materials that would
be discoverable under the Texas Rules of Civil Procedure.  See id. ' 15.10(d)(1).  A recipient may
petition the district court for an order modifying or setting aside the CID.  See
id. ' 15.10(f).  A witness who is asked to
give testimony may be accompanied, represented, and advised by counsel.  See
id. ' 15.10(g)(5)(C).  A testifying
witness may object to any question or assert a privilege.  See id. ' 15.10(g)(5)(E).  Finally, the
attorney general is prohibited from disclosing materials gathered pursuant to a
CID, except in certain circumstances.  See id. ' 15.10(i).








Memorial
Hermann contends that the Legislature intended to create a statutory privilege
in businesses= favor to encourage candid cooperation with a CID.  However, because such
cooperation is required by law, no additional incentive is needed.  See id.
' 15.10(g)(1).  Further, the Act
imposes criminal penalties on any person who deliberately evades or withholds
information from a CID.  See id. ' 15.10(h)(2).  Accordingly, we are
not persuaded by this argument.[3]  Had the
Legislature intended to prohibit all dissemination of CID materials,
even those held by a private antitrust defendant, it could have expressly
crafted such a privilege.  It did not.

            Moreover, the
consequences of Memorial Hermann=s proposed construction are
undesirable and obviously contrary to legislative intent.  See
Bridgestone/Firestone, Inc., 878 S.W.2d at 134.  Memorial Hermann admits
that the attorney general=s antitrust investigation captured 87,000 pages of responsive
materials.  If we were to hold that section 15.10(i)(1) creates a Ablanket privilege,@ every document produced to the
attorney general would not be available to a plaintiff who seeks to promote
economic competition by enforcing the Act through a private antitrust suit.  See
id. ' 15.04.  The Legislature could not
have intended to hamstring private plaintiffs by requiring them to demonstrate Agood cause@ why they should be permitted to
conduct discovery in support of their antitrust contentions.  Therefore, we
cannot accept Memorial Hermann=s interpretation of section 15.10(i)(1).

C.        Harmony with Federal
Judicial Interpretations

The Act
instructs courts to construe its provisions Ain harmony with federal judicial
interpretations of comparable federal antitrust statutes@ to the extent consistent with the
Act=s purpose.  See id.  The
comparable federal antitrust statute provides as follows:








Except as
otherwise provided in this section, while in the possession of the custodian,
no documentary material, answers to interrogatories, or transcripts of oral
testimony, or copies thereof, so produced shall be available for examination,
without the consent of the person who produced such material, answers, or
transcripts, and, in the case of any product of discovery produced pursuant to
an express demand for such material, of the person from whom the discovery was
obtained, by any individual other than a duly authorized official, employee, or
agent of the Department of Justice.  Nothing in this section is intended to
prevent disclosure to either body of the Congress or to any authorized
committee or subcommittee thereof.

15 U.S.C.A. ' 1313(c)(3) (1998).  As Memorial
Hermann notes, section 15.10 is not identical to the federal version.  See
State v. Lowry, 802 S.W.2d 669, 672 (Tex. 1991).  Section 15.10 omits the
verbiage Awhile in the possession of the custodian,@ and includes the Agood cause@ standard commonly found in Texas
statutes.  See id.  However, these differences are not material to our
privilege inquiry.  Rather, the differences between the state and federal
statutes reflect a state legislative intent to depart from one federal standard
B the federal distinction between
pre-suit and post-suit disclosure.  See id.  That is, federal courts
have drawn a distinction between the United States attorney general=s pre-suit and post-suit disclosure
of CID materials to an antitrust defendant.  See id.  Until suit is
filed, all materials gathered under the federal CID remain confidential.  See,
e.g., Massachusetts v. First Nat=l Supermarkets, Inc., 116 F.R.D. 357, 362 (D. Mass.
1987).  After suit is filed, however, the antitrust defendant may obtain all
CID materials relevant to its defense.  See id.; Lowry, 802
S.W.2d at 672.  The Texas Legislature sought to eliminate this distinction:

Not found
in the federal statute is the Agood cause@ predicate to disclosure of CID materials which was
added to the state statute.  Rather than adopting the distinction between
presuit and postsuit that was engrafted upon its federal counterpart to
determine what CID materials must be made available, the Texas CID statute
hinges the issue of disclosure [by the attorney general] on the existence of
good cause.

Lowry, 802 S.W.2d at 672.  Removal of this
federal distinction does not extend the attorney general=s privilege to the producing party.








We are
reminded that section 15.04 exhorts us to construe the Act in harmony with
federal judicial interpretations of comparable B not necessarily identical B federal antitrust statutes.  See
Tex. Bus. & Comm. Code Ann. ' 15.04.  The Fifth Court of Appeals
has previously noted that section 15.10 of the Act is Avery similar@ to the federal version.  See Att=y Gen. of Tex. v. Allstate Ins. Co., 687 S.W.2d 803, 806B07 (Tex. App.CDallas 1985, writ ref=d n.r.e.). We agree; accordingly, we
will construe section 15.10 in harmony with federal judicial interpretations of
title 15, section 1313(c)(3) of the United States Code.

Those
federal judicial interpretations consistently hold that the federal antitrust
statute does not establish a privilege for CID materials held by defendants.  See
NASDAQ, 929 F. Supp. at 725 (AIndeed, the few cases that have
addressed this question have come down squarely in favor of compelling the
production of CID materials in the hands of Defendants.@); see also In re Air Passenger
Computer Reservations Sys. Antitrust Litig., 116 F.R.D. 390, 393 (C.D. Cal.
1986) (ANeither the statutory language nor
the legislative history supports defendants= view that CID deposition transcripts
are not discoverable when held by defendants in civil actions.@); In re Domestic Air Transp.
Antitrust Litig., 142 F.R.D. 354, 356 (N.D. Ga. 1992) (AThe statute provides no protection
against release [of CID materials] by any other party who has possession of the
document.@).[4]

Accordingly,
we overrule relators= first issue.  Because of our resolution of this issue, we
need not address Memorial Hermann=s contention that Stealth failed to
show Agood cause@ for the disclosure of the CID
materials.

 

 








                                                              OVERBREADTH

In their
second issue, Memorial Hermann contends that because Stealth=s requests for production numbers 40
and 70 are overly broad, the trial court abused its discretion in compelling
production.  Stealth responds that Memorial Hermann was required to produce
evidence to support its discovery objection.  See Tex. R. Civ. P.
193.4(a).  Evidence is not necessary to support an objection if the discovery
requests themselves demonstrate overbreadth as a matter of law.  In re Union
Pac. Res. Co., 22 S.W.3d 338, 341 (Tex. 1999) (orig. proceeding).  Because
Memorial Hermann produced no evidence to support its resistence to discovery,
we are limited to the wording of the requests in determining overbreadth.  See
Tjernagel v. Roberts, 928 S.W.2d 297, 301 (Tex. App.CAmarillo 1996, orig. proceeding).

The
Requests in question are as follows:

Request
for Production 40.  Documents
reflecting any oversight of MHHS=s
charitable mission by the Attorney General of the State of Texas, including
documents submitted to the Attorney General, documents received from the
Attorney General, and documents reflecting communications with the Attorney
General on this topic.

Request
for Production 70.  To the extent not
already requested and/or produced in this litigation, all documents and all
answers to interrogatories produced or provided by MHHS to the Attorney General
of Texas or its attorneys in connection with the Civil Investigative Demand
issued to you or MHHS in 2006 (or thereafter) by the Antitrust and Civil
Medicaid Fraud Division.








Notwithstanding the
different subjects covered by these requests, Memorial Hermann asserts that the
only remaining documents responsive to request 40 consist of the CID materials
also sought by request 70.  Consequently, our resolution of request 40 is
dependent upon our ruling with respect to request 70.[5]

While
the scope of discovery is Aquite broad,@ it remains confined by the subject matter of the case and
the reasonable expectations of gathering information that will aid in the
resolution of the dispute.  See Tex. R. Civ. P. 192 cmt. 1.  Therefore,
discovery requests must be reasonably tailored to include only matters relevant
to the case.  CSX, 124 S.W.3d at 152.  A specific discovery request that
is reasonably tailored to include only relevant matters is not overbroad merely
because it may call for some information of doubtful relevance.  See Texaco,
Inc. v. Sanderson, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding).  A
central consideration in determining overbreadth is whether the discovery
request could have been more narrowly tailored to avoid inclusion of tenuous
information, while still capturing the necessary pertinent information.  CSX,
124 S.W.3d at 153; In re Sears, Roebuck & Co., 123 S.W.3d 573, 579
(Tex. App.CHouston [14th Dist.] 2003, orig. proceeding).  For example, requiring
production from an unreasonably long time period or from distant and unrelated
locales may be facially overbroad.  See In re Am. Optical Corp., 988
S.W.2d 711, 713 (Tex. 1998) (orig. proceeding).








Memorial
Hermann contends that, because the attorney general is authorized to conduct a Afishing expedition@ through a civil investigative
demand, any discovery request that echoes a CID therefore must be patently
overbroad.  We disagree with this sweeping statement.  The attorney general=s authority to issue a CID derives
from the right to institute a public antitrust action and conduct a civil Aantitrust investigation.@  See Tex. Bus. & Comm.
Code Ann. '' 15.10(b), 15.20.  An Aantitrust investigation@ is Aany inquiry conducted by the attorney
general for the purpose of ascertaining whether any person is or has been
engaged in or is actively preparing to engage in activities which may
constitute an antitrust violation.@  See id. ' 15.10(a)(1).  A demand may require
the production of documents Aonly if the material or information sought would be
discoverable under the Texas Rules of Civil Procedure or other state law
relating to discovery.@  Id. ' 15.10(d)(1).  The attorney general may then file a public
lawsuitCusing the information gathered
through a CIDCagainst any person whom the attorney general believes has violated
subsections (a), (b), or (c) or Section 15.05.  See id. ' 15.20(a).  Likewise, any person may
also bring a private suit for the same alleged statutory violations.  See id.
' 15.21(a)(1).  Given the similarities
between public and private antitrust suits, and in light of section
15.10(d)(1), we are not convinced that the scope of the attorney general=s investigative power automatically
exceeds the scope of permissible discovery allowed to a private party by the
Rules.  See id.  ' 15.10(d)(1).

In
support of its contention that Stealth=s requests are facially overbroad, Memorial
Hermann directs us to In re Graco Children=s Products, Inc., 210 S.W.3d 598 (Tex. 2006) (orig.
proceeding).  In that case the plaintiff sued Graco, alleging that defects in a
baby car seat=s five-point harness caused the death of her son.  See id. at
600.  Shortly before the trial setting, Graco paid a substantial civil penalty
to the Consumer Products Safety for failing to report defects in more than a
dozen products, including high chairs, swings, strollers, toddler beds, and
infant carriers.  See id.  None of the listed defects involved
five-point harnesses.  See id.  The plaintiff nonetheless sought
production of twenty categories of documents Aincluding anything that mentioned or
referred to@ any of the defects or products.  See id.  Graco objected that the
civil penalty had nothing to do with the carrier or defect at issue, and that production
would involve 20,000 pages of documents located in other states.  See id. 
The Supreme Court of Texas found the requests overly broad as a matter of law
because there was Ano apparent connection between the alleged defect and the
discovery ordered.@  Id. at 601.








Unlike
in Graco, Stealth=s request is not facially overbroad.  Both the attorney
general and Stealth may prosecute antitrust actions against Memorial Hermann
for the same statutory violations.  See Tex. Bus. & Comm. Code Ann. '' 15.20(a), 15.21(a)(1).  Memorial
Hermann has not demonstrated that all or part of the  CID materials do not
relate to Stealth=s claims in this lawsuit.  An overbreadth objection
contemplates that certain responsive documents are relevant, but others are
not; the request therefore should be narrowly tailored to include the former
category and exclude the latter.  See generally CSX, 124 S.W.3d at 153. 
In sustaining an overbroad objection, a court usually draws that line for the
litigants or, at the very least, determines that such a line can be
drawn in the first place:

When a party=s attempted reach exceeds its legal grasp, we
routinely limit the reach; we do not amputate the hand.  So, for example, in American
Optical we rejected defendant=s
argument that Adue to the overbreadth, plaintiffs= entire request for production should be struck.@  Instead, we concluded that Arather than ... attempting to set the precise bounds
of discovery in the first instance, we believe the trial court should have an
opportunity to reconsider its ruling in light of our opinion today.@

In re Alford
Chevrolet-Geo, 997
S.W.2d 173, 191B92 (Tex. 1999) (orig. proceeding) (citations omitted) (Hecht,
J., concurring in part and dissenting in part).

In this
case, Memorial Hermann has not demonstrated that Stealth=s request would capture irrelevant
documents.  We can envision a scenario in which a trial court could sustain an
objection to requests like Stealth=s if presented with, for example,
either the disputed documents in camera or the attorney general=s CID.  Examination of the CID here
might have permitted the trial court to conclude that the attorney general=s investigation went beyond the scope
of Stealth=s allegations.  Without such evidence, we cannot conclude that the trial
court abused its discretion in overruling Memorial Hermann=s objections.








We do
not necessarily approve of the broad wording of requests 40 and 70.  However,
absent evidence that Stealth=s request would capture irrelevant documents, we are
constrained to find that Memorial Hermann has not shown an abuse of discretion
by the trial court warranting mandamus relief.

We
overrule relators= second issue.

Accordingly,
we deny the petition for writ of mandamus.

 

 

/s/      Adele Hedges                                                                                           Chief
Justice

 

 

Petition Denied, and Majority and
Concurring Opinions filed, October 9, 2008.

Panel consists of Chief Justice
Hedges, Justice Frost, and Senior Justice Hudson.*
(Frost, J., concurring).









            [1]           The
Honorable John Donovan, presiding judge of the 61st District Court of Harris
County.





            [2]           Herein
we will refer to antitrust lawsuits filed by the attorney general as Apublic,@
and those filed by aggrieved persons Aprivate.@  See Tex. Bus. & Comm. Code Ann. '' 15.20(a), 15.21(a)(1) (Vernon 2002).





            [3]           See
also In re NASDAQ Market-Makers Antitrust Litig., 929 F. Supp. 723, 726 (S.D.N.Y. 1996) (A[C]ooperation with CID demands is required by law, and
the balance of incentives is thus relatively unconvincing.@).





            [4]           See
also Midwest Gas Svcs., Inc. v. Indiana Gas Co., No. IP99-0690-C-Y/G, 2000
WL 760700, at *1 (S.D. Ind. March 7, 2000) (AWe
agree ... that section 1313(c)(3) does not create a privilege for C.I.D.
materials in the hands of a private person.@). 





            [5]           Memorial
Hermann conceded at oral argument that it has placed its charitable mission at
issue in the underlying lawsuit.  See also Tex. Bus. & Comm. Code
Ann. ' 15.05(i) (permitting the court, in an antitrust suit,
to consider whether a restraint to the delivery of physician services lessens
the cost of such services to benefit the public interest).





            *Senior
Justice Hudson sitting by assignment.