Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-12-00140-CV

## IN RE AMERICAN POWER CONVERSION CORPORATION

Original Mandamus Proceedings[1]

Opinion by:     Phylis J. Speedlin, Justice

Sitting:     Karen Angelini, Justice
             Phylis J. Speedlin, Justice
             Rebecca Simmons, Justice

Delivered and Filed:  July 5, 2012

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

This case stems from a house fire and the resulting product liability lawsuit.  Real Parties

in Interest, Sara Villarreal, Individually and as Next Friend of Carlota Martinez, Rosalia Godina

Medel, Individually, and Rosalia Godina Medal and Alvaro J. Medel on Behalf of the Estate of

Karina Medel (collectively "plaintiffs")[2] filed suit against various computer companies and

---

[1] This proceeding arises out of Cause No. 6660, styled *Sara Villarreal, Individually and as Next Friend of Carlota Martinez, a Minor and Rosalia Godino Medel, Individually, and Rosalia Godina Medel and Alvaro J. Medel on behalf of the Estate of Karina Medel, Plaintiffs/Intervenors v. Alvaro J. Medel, Defendant/Cross-Plaintiff and Best Buy Stores, L.P., American Power Conversion Corporation, EMachines, Gateway Companies, Inc., and Acer America Corporation, Defendants/Cross-Defendants*, pending in the 49th Judicial District Court, Zapata County, Texas, the Honorable Jose A. Lopez presiding.

[2] Although properly titled Real Parties in Interest in the current proceeding, because all parties refer to this group of plaintiffs, intervenors, and cross-plaintiffs as "plaintiffs," we will also refer to the group of parties jointly as "plaintiffs."

American Power Conversion Corporation ("APC")[3] alleging their products caused the fatal house fire in question. APC argues that the trial court's discovery orders are not reasonably tailored to include only relevant matters. More specifically, because the plaintiffs failed to show a link between the requested items and any alleged defect, the trial court abused its discretion.

## BACKGROUND

The Medels purchased a computer and power supply/surge protector, produced by APC, at a Best Buy store in December of 2006. Approximately two months later, on February 26, 2007, a fire occurred at the Medel residence resulting in the loss of life of seven-year-old Karina Medel. The plaintiffs' petition accuses APC of design, manufacturing, and marketing defects. APC urges that the specific defects causing the fire are not identified in either the plaintiffs' pleadings or their discovery responses. The pleadings do, however, provide that the BE350R (the specific model purchased by the Medels at Best Buy) was "defective, had inferior components, and unreasonably dangerous." At a hearing, plaintiffs' counsel explained, "The defect in this case is the battery backup caught on fire."

APC manufactures product lines that include different features for different sets of customers, ranging from home users, to businesses, to large-scale data centers. In this case, the product in question is a line of uninterruptible power supply products known as "back-UPS." APC manufactures, sells, and has offices in North America, South America, Europe, and Asia with documents and responsive materials located in sites around the world.

In twenty-seven different requests, the plaintiffs demanded that "APC produce all documents regarding the 350 series and 500 series back up power supply units/devices batteries." The requests were made without time restrictions. In these requests for production, the plaintiffs

---

[3] Plaintiffs sued Best Buy (the retail seller of the computer system), Emachines, Gateway, and/or Acer (the manufacturer of the computer), and American Power Conversion Corporation (the manufacturer of the computer power supply/surge protector). APC is the only relator in these proceedings.

requested all technical bulletins, engineering change orders and/or electronic data, in-house and external documents and/or electronic data for any testing performed, test process summaries, task reports, "Safety Critical Incident Reports," "Corrective Action Discussion," "Corrective Action Record," and "Failure Mode and Effects Analysis." They sought documents and/or electronic data as a result of individual complaints, merchant complaints, or the return of any 350 or 500 series back-UPS. The plaintiffs also sought copies of all photos and/or schematics of the internal components and documents and/or electronic data identifying the internal components, data on when or why units were discontinued or replaced, and U.S. Consumer Product Safety Commission recalls.

APC objected to the plaintiffs' requests contending, in part, that the only relevant discovery relates to documentation of the BE350R and they had complied with the request by producing over 800 documents. Additionally, APC explained that the products similar to the BE350R, which are manufactured by APC, include the BE350U, BE500U, BE500R, and the BE550R.

After considering written objections and listening to arguments of counsel, the trial court ordered APC to produce the following:

(1) APC back-UPS "CS" and "ES" sub-family class 350 series and 500-599 series back up power supply products designed, manufactured or sold in English speaking countries from January 2000 to the present;

(2) All discovery produced in relation to the *Stewart* lawsuit;

(3) Copy of all "PB 137" (printed circuit board 137) and/or any other printed circuit board complaints; and

(4) Copy of all internal analysis of "PB 137" and/or any other printed circuit board failures for the 350 series and 500 series back-up power supply units/devices/batteries.

## JURISDICTION

"[An] order that compels overly broad discovery well outside the bounds of proper discovery is an abuse of discretion for which mandamus is the proper remedy." *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995); *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Similarly, mandamus relief may be available when the trial court compels production beyond the permissible bounds of discovery. *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322–23 (Tex. 2009) (orig. proceeding); *see In re Am. Optical Corp.*, 988 S.W.2d 711, 714 (Tex. 1998) (orig. proceeding) (concluding that no adequate appellate remedy existed where the trial court ordered overly broad discovery). "If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist." *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding); *see Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992) (orig. proceeding) (noting that a party will not have an adequate remedy by appeal when a trial court's order "imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party").

### DISCOVERY ORDER

### A.     Standard of Review

An appellate court reviews a trial court's ruling on discovery requests for abuse of discretion. *See Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998); *Johnson v. Davis*, 178 S.W.3d 230, 242 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Trial courts have broad discretion in matters of discovery. *Johnson*, 178 S.W.3d at 242. A trial court abuses its discretion when it makes a decision "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839; *see also In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). When the decision turns on a determination of the

facts, an appellate court may not substitute its judgment for that of the trial court. *Walker*, 827 S.W.2d at 840. Yet, when a trial court fails to analyze or apply the law correctly in regard to legal principles, the appellate review is less deferential. *Id.*

Generally, a trial court maintains the discretion to define the scope of discovery allowed under the rules of civil procedure but must remain cognitive of the duty to impose reasonable limits on discovery requests. *In re Am. Optical*, 988 S.W.2d at 713. More specifically, reasonable discovery bears a "reasonable expectation of obtaining information that will aid the dispute's resolution" and must be "'reasonably tailored' to include only relevant matters." *In re CSX Corp.*, 124 S.W.3d at 152; *In re Graco Children's Prod., Inc.*, 210 S.W.3d 598, 601 (Tex. 2006) (orig. proceeding); *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180–81 (Tex. 1999) (orig. proceeding) (holding that discovery requests must be reasonably tailored to include only matters relevant to the case and may not be used as a fishing expedition or to impose unreasonable discovery expenses on the opposing party); *see also* TEX. R. CIV. P. 192.3 (discovery should be of information "reasonably calculated to lead to the discovery of admissible evidence"). When a trial court's discovery order fails to narrowly tailor the requested discovery to relevant matters, it is impermissibly overbroad. *In re Alford Chevrolet-Geo*, 997 S.W.2d at 180 n. 1. Additionally, a trial court's discretion in defining the scope of discovery is tempered by the duty to impose reasonable limits on discovery requests. *See* TEX. R. CIV. P. 192.3; *In re CSX Corp.*, 124 S.W.3d at 152; *In re Am. Optical*, 988 S.W.2d at 713.

Without question, the scope of discovery exceeds the scope of admissible evidence, and admissibly is not required for information to be discoverable. *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990) (Discovery requests are liberally construed to allow litigants to obtain the "fullest knowledge of the facts and issues prior to trial."). The rules of civil procedure

require that a request for discovery be "relevant to the subject matter of the pending action." *See* TEX. R. CIV. P. 192.3. Under Texas Rules of Evidence 401 and 402, relevant evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence," and is, therefore, generally admissible. *See* TEX. R. EVID. 401, 402. Although the products need not be identical, there must be "a connection between the alleged defect and the discovery ordered." *In re Exmark Mfg. Co., Inc.*, 299 S.W.3d 519, 529–30 (Tex. App.—Corpus Christi 2009, orig. proceeding [mand. dism'd]). Importantly, the party objecting to discovery bears the burden to present any and all evidence necessary to support its objections. *See* TEX. R. CIV. P. 193.4(a), 199.6; *In re CSX Corp.*, 124 S.W.3d at 151.

**B.  Alleged Defect**

A manufacturing defect exists "when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 540 (Tex. 2011) (*quoting Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006)). The plaintiffs aver that unless APC's product is designed to catch on fire, the fact that it does catch on fire is a defect. APC argues that without a specified defect, the plaintiffs' discovery requests constitute the type of "fishing expedition" that the courts continually strike down. *See In re CSX*, 124 S.W.3d at 153; *In re Ace Credit Servs., LLC*, 2010 WL 1491780, 2 (Tex. App.—San Antonio 2010) (orig. proceeding) (cautioning that discovery can become "a weapon capable of imposing large and unjustifiable costs on one's adversary."); *see also In re Alford Chevrolet-Geo*, 997 S.W.2d at 180.

The Texas Supreme Court opinion in *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009), is instructive. The *In re Deere* court recognized that the plaintiff's injuries resulted from

the step and handle mechanism on the Deere product. *Id.* The court, therefore, narrowed the proposed orders from "any model backhoe" to products with handles and step assemblies similar to the 410D in question. *Id.* Because the plaintiff was injured on the step mechanism, any product with a similar design was relevant to the case at hand. *Id.*; *see also In re Graco*, 210 S.W.3d at 600–01 (limiting discovery requests to products containing a harness clip similar to the one utilized in the car seat at issue); *In re Exmark,* 299 S.W.3d at 529–30 (focusing order on the production of documents with a lack of rollover protective systems on zero-turn riding lawnmowers and different models of the same basic product was reasonably tailored to the relevant product defect).

It is undisputed that the product purchased at Best Buy and at issue is the APC model number BE350R. We must, therefore, determine the relevancy of the discovery requests against APC model BE350R.

**C. CS Family of Products and Requests for Production 71 and 73 (the PB 137 Circuit Board Requests)[4]**

The plaintiffs assert their request for CS products stems from a previous APC product recall. More specifically, the plaintiffs argue that CS products are tied to previous fire concerns. "The fact that there's a recall, a recall based on the . . . CS subfamily, that the recall catches on fire or is a fire hazard, which is what we're saying is the defect in our case." In 2003, APC voluntarily recalled a BK series of products due to "potential overheating and fire hazard." Before the trial court, APC asserted this recall included the BK350, BK500, and BK500BLK power supply devices. The recall notice, however, listed twenty-one different model numbers and contained products with model numbers containing 325, 350, 475 and 500. Additionally, the

---

[4] PB 137 was the circuit board in the CS family products subject to the recall.

record includes allegations that the CS models were a precursor to the BE350R, and the class immediately before the ES class. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997).

APC argues the CS products are a different design and the circuitry, or anything similar to that circuitry, has not been used since 2003. The BE350R, on the other hand, was not manufactured before 2005 and has totally different circuitry than those models. As such, APC urges the CS family of products is irrelevant to the case at hand.

In a product liability case, the plaintiff is required to prove a design-defect claim with expert testimony. *Mack Trucks, Inc. v Tamez*, 206 S.W.3d 572, 583 (Tex. 2006). Moreover, alternative design is an accepted theory of recovery under Texas products liability law. *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1079–80 (5th Cir. 1986). As such, evidence of safer alternatives "is relevant insofar as it depicts the available scientific knowledge and the practicalities of applying that knowledge to a product's design." *Id*. It follows that whether APC redesigned the product, so as to avoid the danger of overheating or fire, is relevant to whether APC avoided a known defect. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 62 (Tex. 1983). Because the plaintiffs have made a showing that there were allegations of a fire hazard, and that the CS family was a precursor to the ES family, we cannot say that the trial court abused its discretion in ordering production of discovery in relation to the CS products, and the PB 137 circuit board, that were subject to the 2003 APC voluntary recall. *See In re Alford Chevrolet– Geo*, 997 S.W.2d at 180 n. 1.

Even if the CS family of products is sufficiently similar to the BE250R, the plaintiffs' requests must still be sufficiently tailored so that the information and/or documents sought are relevant to plaintiffs' claims. Here, the plaintiffs' discovery requests were limited by the number associated with each APC model, but that designation refers to the capacity of the unit, not

necessarily the design. Although the trial court appeared to limit the discovery by the APC model groupings, the order did not make any limitations regarding the types of documents.

Overbroad requests for irrelevant information are improper if the discovery requests themselves demonstrate overbreadth as a matter of law. *See In re CSX Corp.*, 124 S.W.3d at 153; *In re Union Pac. Res. Co.*, 22 S.W.3d 338, 341 (Tex. 1999) (orig. proceeding); *In re Mem'l Hermann Healthcare Sys.*, 274 S.W.3d 195, 202 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). On the record before this court, we cannot determine, for example, how certain questions are relevant to the issues in this case. More specifically, the plaintiffs seek copies of all documentation relating to discounts and return policy agreements with merchants, vendors and distributors. What arrangements APC may have made with third-parties regarding discounts and return policies cannot reasonably lead to relevant discovery on how the fire in question was started. We, therefore, conclude that although the models and associated circuit boards involved in the 2003 voluntary recall are relevant, the trial court did not narrowly tailor the scope of the requests. Because the type of documents requested must also be relevant, the trial court abused its discretion with regard to the breadth of the requested documents. *See Hall v. Lewis*, 907 S.W.2d 493, 495 (Tex. 1995).

**D.     ES Family of Products**

The plaintiffs next argue that the BE250R is in the ES family of products and, therefore, discovery requests relating to other products in the ES family is relevant. APC agrees that the BE350R is in the ES family of products. Beyond that distinction, however, the record does not support any allegations that the ES family has identical circuitry or design. The only evidence offered to the trial court was that the BE350R was a member of the ES family. APC thus contends that the broad discovery request for the entire ES family of products is not reasonably

tailored to include only matters relevant to the case, and is instead a fishing expedition. *See In re Graco*, 210 S.W.3d at 601. We agree. Because the plaintiffs failed to link the BE350R product with the other models contained within the ES family, the request is not narrowly tailored to include only relevant materials. *In re CXS Corp.*, 124 S.W.3d at 152. Accordingly, the trial court abused its discretion with regard to the production of the APC models contained within the entire ES family.

### E.     *Stewart* **Litigation Documents**

The *Stewart* litigation was a settled claim stemming from a house fire in which allegations were levied that a different APC product, model number BF350U, caught fire causing damage and loss of life. Discovery in other lawsuits may be allowed when the information sought is relevant, that is, when the other lawsuits have a material connection to an issue in the case, or present the same or similar issues, or are factually similar. *See Garcia v. Peeple*, 734 S.W.2d 343, 346–47 (Tex. 1987); *IFS Sec. Group, Inc. v. Am. Equity Ins. Co.*, 175 S.W.3d 560, 564 (Tex. App.—Dallas Oct 31, 2005, no pet.). However, just because a party produced documents in one lawsuit does not necessarily mean a different party may force the documents to be produced in an entirely different lawsuit. *In re Rogers*, 200 S.W.3d 318, 324 (Tex. App.—Dallas 2006) (orig. proceeding).

As evidence of similarity, the plaintiffs contend that the back-UPS in the *Stewart* case was a model contained within the ES family and there was evidence of fire hazard. The record, however, contains testimony that the *Stewart* litigation involved APC model BF350U, a model contained within APC's ***office products***. Moreover, the testimony supports that the BF350U was discontinued in 2002, used a different inverter, circuit board, transformer, windings, and

clamping system. There was simply no connection shown between the office product in question and the home-use model BE350R.

Unlike the CS family of products, where there is evidence of a predecessor design of the BE350R model, the plaintiffs failed to make a connection between the design of the BE350R and the design of the *Stewart* model BF350U. We, therefore, conclude the plaintiffs failed to show that the *Stewart* litigation documents were relevant. The trial court abused its discretion in requiring the documents produced.

## F.      Time Constraints

APC next argues the trial court failed to place appropriate time constraints on the discovery requests. Discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad. *See Am. Optical*, 988 S.W.2d at 713. A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information. *Id.* Discovery requests must be limited by time, place, and subject matter. *In re Xeller*, 6 S.W.3d 618, 626 (Tex. App.─Houston [14th Dist.] 1999, orig. proceeding). Like with the different model types discussed above, a trial court must make an effort to impose reasonable discovery limits with regard to time and geographical location. *In re Am. Optical*, 988 S.W.2d at 713.

Here, the trial court limited the request for production both temporally and geographically. The discovery order limited the requests from January of 2000 forward. According to APC's own documents, production of the CS family ceased in 2003, thereby providing three years of discovery with regard to the CS family. Similarly, the ES family was

not placed into production until 2005 or 2006, so the discovery request is only five or six years' worth of records. Moreover, the trial court apparently considered APC's complaint regarding the expense associated with world-wide records and the cost of translating such documents and limited this portion of the discovery to English speaking countries. Based on the record before us, we cannot say the trial court abused its discretion regarding the time and location limitations placed on the discovery requests. *See In re CSX Corp.*, 124 S.W.3d at 152; *In re Am. Optical*, 988 S.W.2d at 713.[5]

## CONCLUSION

Although the plaintiffs made a showing to support a connection between the APC model in question and the APC models subject to the 2003 voluntary recall, the trial court's order did not narrowly tailor the requests with regard to the type of documents to be produced. Moreover, in light of the evidence, the trial court abused its discretion in requiring production of the entire ES family of products and the discovery documents contained within the Stewart litigation. Accordingly, we conditionally grant the petition for writ of mandamus. The trial court is ordered to vacate its Order Granting Intervenors and Defendant/Cross-Plaintiffs' 3rd Motion to Compel dated December 20, 2011. The writ will issue only if the trial court fails to comply within fourteen days.

Phylis J. Speedlin, Justice

---

[5] APC also argued that the plaintiffs were asked, in a proper interrogatory, their contention of the alleged defect. Over APC objection, the trial court refused to compel a substantive answer to plaintiffs' response "I'm not an expert . . . I don't know." Because this issue was not included in the trial court's order or produced as part of the record of the case, it was not properly preserved for appellate review. TEX. R. APP. P. 33.1.